**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1468**

FLUOR FEDERAL SOLUTIONS, LLC,

    Plaintiff - Appellant,

  v.

PAE APPLIED TECHNOLOGIES, LLC,

    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, District Judge. (1:16-cv-00215-AJT-JFA)

Argued: March 21, 2018         Decided: April 12, 2018

Before WILKINSON, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Benjamin L. Hatch, MCGUIREWOODS LLP, Norfolk, Virginia, for Appellant. Mark William Mosier, COVINGTON & BURLING, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Scott P. Fitzsimmons, Eric Lieberman, WATT, TIEDER, HOFFAR & FITZGERALD, LLP, McLean, Virginia; Ronald L. Fouse, Washington, D.C., E. Rebecca Gantt, MCGUIREWOODS LLP, Norfolk, Virginia for Appellant. Daniel E. Johnson, Bryan M. Byrd, COVINGTON & BURLING LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

More than a dozen years after Fluor Federal Solutions, LLC entered into a contract with PAE Applied Technologies, LLC, Fluor brought this action, alleging that PAE breached that contract. Following a three-day bench trial, the district court entered judgment for PAE. Fluor appeals, and for the reasons that follow, we affirm.

I.

In 2000, the predecessor companies of Fluor and PAE initiated discussions regarding a bid that PAE was preparing to submit to an Air Force contract. To make its bid competitive, PAE requested that Fluor and other subcontractors cap the rate of their General and Administrative ("G&A") costs to 2.3% of direct costs. PAE contends that, after some discussion, Fluor agreed to do so; Fluor asserts that it never did agree to the 2.3% cap. It is undisputed that PAE submitted its final proposal to the Air Force, using the reduced 2.3% rate, and won the Air Force contract.

In October 2002, Fluor began billing PAE for work completed under its Subcontract with PAE. The Subcontract between Fluor and PAE required Fluor to submit invoices every two weeks and PAE to pay them within 30 days. During the first year of the Subcontract, Fluor, without dispute, submitted invoices for G&A costs with the 2.3% cap, and PAE paid G&A costs at that rate.

Beginning in January 2004, Fluor submitted invoices with G&A costs exceeding the 2.3% cap. PAE rejected the increased rate and continued to pay Fluor the amount due

2

under the 2.3% G&A rate.  Intermittently over the years, Fluor complained about the 2.3% cap, but PAE continued to pay pursuant to the 2.3% cap.

In March 2016, nearly 12 years after PAE initially paid Fluor pursuant to the 2.3% cap, Fluor filed this action alleging that PAE breached the Subcontract by refusing to pay Fluor's actual G&A costs.  Both PAE and Fluor moved for summary judgment, which the district court denied.  Following a three-day bench trial, the court found that the Subcontract was ambiguous and, relying on parol evidence, concluded that Fluor and PAE had agreed to a 2.3% G&A cap.  The district court ruled against Fluor on all counts and entered judgment for PAE.

On appeal, Fluor argues that the district court erred in holding the contract ambiguous and concluding on the basis of parol evidence that the parties agreed to impose a 2.3% cap on Fluor's G&A costs.  PAE maintains that the court correctly concluded that the contract was ambiguous and properly relied on parol evidence, and additionally contends that the applicable five-year statute of limitations bars Fluor's claim.  Because we conclude that limitations do indeed bar Fluor's claim, we do not reach the contract interpretation arguments.

II.

A.

Under Virginia law (which the parties agree applies in this diversity case), an action for breach of contract must be brought within five years after the cause of action accrues.  Va. Code Ann. § 8.01-246(2).  The limitation period begins to run "when the

3

breach of contract occurs." *Id.* § 8.01-230. PAE argues that this statute of limitations bars Fluor's claim because the claim accrued in 2004 when the alleged breach — PAE's capping of Fluor's G&A costs — occurred.

In cases like this in which an alleged breach spans an extended period of time, courts have distinguished between acts that constitute a "single contin[uous] breach" and those that constitute a "series of separate breaches." *Am. Physical Therapy Ass'n v. Fed'n of State Bds. of Physical Therapy*, 628 S.E.2d 928, 929 (Va. 2006). A single continuous breach occurs when "the wrongful act is of a permanent nature" and "produces all the damage which can ever result from it." *Hampton Rds. Sanitation Dist. v. McDonnell*, 360 S.E.2d 841, 843 (Va. 1987) (citation and internal quotation marks omitted). Conversely, when wrongful acts "occur only at intervals, each occurrence inflicts a *new injury* and gives rise to a new and separate cause of action." *Id.* (emphasis added).

If the alleged breach is a "single continuous breach," the limitations period runs from the inception of that breach, even when the breach continues for years. *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 379 S.E.2d 316, 318 (Va. 1989) (rejecting contention that "a new cause of action" occurred every day defendant breached contract during seven year period). Thus, the *Westminster* court held that failure to enforce a uniform business hours provision, required by the parties' lease, constituted a single continuous breach that accrued on the first day of the alleged breach despite the fact that the conduct continued for years. *Id.* The subsequent failures to enforce the business hours provision did not constitute *new* individual breaches because it was the initial

4

wrongful conduct — failure to enforce business hours — that produced the plaintiff's harm. *Id.*; *see also Hunter v. Custom Bus. Graphics,* 635 F. Supp. 2d 420, 422–23 (E.D. Va. 2009) (explaining that an employer's payment over an 11-year period to his employee of a fixed commission rate lower than the higher rate set forth in the employment agreement constituted a single continuous breach).

By contrast, in *American Physical Therapy*, the court held that a breach of contract claim was not a continuous breach where the defendant from time-to-time during a seven year period increased licensure fees. 628 S.E.2d at 929–30. The crucial term in the contract stated that the defendant "shall establish prices for the Examination" periodically. *Id.* at 929. The court therefore explained that a distinct obligation arose *each time* the defendant periodically imposed a new fee. *Id.* at 930. Moreover, because each fee increase was determined based on the prior fee, the imposition of a new fee also beget a new injury, thereby creating separate, distinct breaches of contract. *Id.*

Given this precedent, we can only conclude that Fluor asserts a "single continuous breach" of the Subcontract by PAE. Fluor alleges in its complaint that from the outset, "PAE wrongfully refused to pay Fluor more than 2.3% for Fluor's G&A cost incurred on the project" and continued through the entire Subcontract to refuse to pay any amount in G&A costs "above the artificial 2.3% cap." J.A. 15, 17. *See* Reply Br. of Appellant at 25 ("[I]n 2004 . . . PAE first refused to pay Fluor its actual G&A costs."). In other words, Fluor alleges that PAE initially breached and continued to breach the contract in exactly the same manner for the next dozen years. It is undisputed that PAE first rejected Fluor's invoices requesting payment of G&A costs at a rate higher than 2.3% in *January 2004*.

5

J.A. 328–29; J.A. 687–88. Thus, if PAE breached the contract, it did so in a single continuous breach running from when PAE began to reject Fluor's invoices in 2004.

Unlike *American Physical Therapy*, where each additional fee increase inflicted a new injury, PAE's imposition of a 2.3% cap on Fluor's G&A costs did not give rise to a new or distinct injury: Fluor's entire harm flowed directly from PAE's initial decision to cap G&A costs. That Fluor's alleged damages increased over the course of the contract does not alter the fact that the breach was single and continuous. Virginia law makes clear that "the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date." *Caudill v. Wise Rambler, Inc.,* 168 S.E.2d 257, 260 (Va. 1969)*; see also Van Dam v. Gay*, 699 S.E.2d 480, 482 (Va. 2010) ("[I]t is immaterial that all the damages resulting from the injury do not occur at the time of the injury.").

Fluor's suit, filed twelve years after this breach accrued, clearly falls outside the governing five-year statute of limitations. Accordingly, limitations bar its claim.[*]

B.

---

[*] Fluor makes the meritless suggestion that we cannot render a decision on limitations grounds "[i]n the absence of appropriate findings of fact and conclusions of law from the district court." Reply Br. of Appellant at 24. Virginia law makes clear that if a resolution of a statute of limitations defense rests on undisputed facts, it may be applied as a matter of law. *Hensel Phelps Constr. Co. v. Thompson Masonry Contractor, Inc.*, 791 S.E.2d 734, 737 (Va. 2016) (explaining that because the statute of limitations defense was "based on undisputed facts and the applicable contracts and statutes," the court reviews the lower court decision *de novo*). Our holding rests entirely on undisputed facts, i.e., beginning in 2004 Fluor submitted biweekly invoices of its actual G&A costs, PAE refused to pay Fluor's G&A costs above the 2.3% cap, and this alleged harm continued for the duration of the contract.

In resisting the limitations bar, Fluor offers two unpersuasive arguments.

First, relying on a government regulation, Federal Acquisition Regulation ("FAR") § 52.216-7, which was incorporated into the Subcontract, Fluor contends that its claim did not accrue until 2015 when the Government completed its audit of the Subcontract thereby establishing Fluor's "final rates." Reply Br. of Appellant at 25; 48 C.F.R. § 52.216-7(e). That argument ignores the fact that this very same regulation requires the contractor (here, PAE) to pay the subcontractor (here, Fluor) the subcontractor's "anticipated final rates" in accordance with the terms of the contract. 48 C.F.R. § 52.216-7(e)(1). Of course, the parties here disagree as to the terms of the contract and the "anticipated final costs": PAE maintains Fluor agreed to a 2.3% cap on its final G&A costs; Fluor contends it did not. But that does not change the fact that if PAE breached the terms of the contract, it did so beginning in 2004 when PAE refused to pay any G&A costs exceeding the 2.3% cap. As Fluor itself acknowledges, its "invoices were continuously rejected by [PAE] unless and until they were recalculated and billed with a G&A rate of 2.3%." J.A. 689. Therefore, if there was a breach, it accrued when PAE first refused to pay the anticipated final rates, not when the Government completed its audit years later.

Fluor's second argument relies on an exception to the limitations bar. The Supreme Court of Virginia has cautioned courts to construe all limitations exceptions narrowly and "[w]here there exists any doubt, it should be resolved in favor of the operation of the statute of limitations." *Burns v. Bd. of Supervisors of Stafford Cty.*, 315 S.E.2d 856, 859 (Va. 1984). Nonetheless, Fluor maintains that, assuming that the breach

7

occurred in 2004, limitations do not bar its claim because the Subcontract is "indivisible." Reply Br. of Appellant at 26. Under an indivisible contract, a party may pursue a remedy immediately upon the breach or wait until the "time fixed by the contract for full and final performance." *Heirs of Roberts v. Coal Processing Corp.*, 369 S.E.2d 188, 190 (Va. 1988). However, when a contract provides for "payment in installments, due at specified times," this exception does not apply. *Id.* The Subcontract expressly provides for "payment in installments": Fluor submitted invoices on a biweekly basis, and PAE paid them within 30 days of receipt. J.A. 621. Thus, the exception for indivisible contracts clearly does not apply.

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.