# CIRCUIT COURT OF THE CITY OF NORFOLK

Christian T. Susko
and Tammy M. Susko,
Administrators
of the Estate of
Christian T. Susko

v.

Svinder S. Toor *et al.*

November 12, 2015

Case No. (Civil) CL13-9379

BY JUDGE DAVID W. LANNETTI

Today the Court rules on the Motion To Dismiss New Claims and Special Plea of the Statute of Limitations filed by Defendant Children's Hospital of the King's Daughters, Inc. ("CHKD"). The Court also rules on two other Motions To Dismiss the entire case, one filed by Defendants Svinder S. Toor, M.D., Larry Eugene White, M.D., and Children's Specialty Group Child & Adolescent Neurology ("Children's Specialty Group") and one filed by CHKD.

Although the case is styled with "Christian T. Susko and Tammy M. Susko" as administrators, the proper administrators apparently are "Christopher Susko and Tammy M. Susko."

The first issue that needs to be resolved by the Court is whether the claims asserted against CHKD and its staff by Plaintiffs Christopher

Susko and Tammy M. Susko ("the Suskos"), administrators of the estate of decedent Christian T. Susko ("Christian"), in their Bill of Particulars are untimely filed and, therefore, barred by the applicable statute of limitations. Second, the Court must decide whether the Suskos reasonably believed — prior to requesting service of process on Defendants — that Registered Nurse Joahanna D. Evans Budge, the individual designated by the Suskos as the certifying expert witness in Plaintiff's Certification of Expert Witness Opinion, would qualify as an expert witness as required by § 8.01-50.1 of the Code of Virginia.

The Court holds that the claims against CHKD and its staff raised in the Suskos' Bill of Particulars are barred by the applicable statute of limitations pursuant to § 8.01-243(A) of the Code of Virginia. The Court, therefore, dismisses those claims, with prejudice. The Court also holds that, as a matter of law, the Suskos could not have reasonably believed prior to requesting service of process on Defendants that Nurse Budge would qualify as an expert witness because, as a non-physician, Nurse Budge is not qualified to provide expert testimony concerning the applicable standard of care or the proximate cause of the human physical injuries sustained by Christian. Because the Suskos failed to obtain an adequate certifying expert opinion prior to requesting service of process on Defendants, § 8.01-50.1 requires the Court to "impose sanctions" on the Suskos. The Court concludes that, considering the circumstances present here, dismissal of the entire action with prejudice is the appropriate sanction. The Defendants' respective motions to dismiss, therefore, are granted and this entire action is dismissed with prejudice.

## Background

The Suskos commenced this action following the August 18, 2010, death of their three-year-old son, Christian. The Suskos filed a wrongful death claim in July 2012, but subsequently nonsuited that action. (Tr. 6.) The Suskos refiled the same claim (the "Complaint") in December 2013 and served the Complaint on Defendants in December 2014. (*Id.*) Defendants requested the Suskos provide a copy of the statutorily required expert certification shortly thereafter. (*Id.*) The Suskos subsequently provided an alleged expert certification prepared by Nurse Budge, which is dated December 5, 2014.

In the Complaint, as amplified by a subsequently filed Bill of Particulars, the Suskos allege that Christian received treatment from Toor and White, neurologists employed by Children's Specialty Group, in June and July 2010 while a patient at Children's Hospital of the King's Daughters (the "Hospital") in Norfolk, Virginia. (Bill of Particulars 1-2.) The Suskos assert that Christian sustained a lumbar puncture and developed pneumonia and a staph infection during his stay at the Hospital while under the care of Toor and White. (*Id.*) The Suskos further claim that nurses employed by

CHKD failed to adequately turn or reposition Christian, which caused him to develop "ventilator/hospital-acquired pneumonia." (*Id.* at 1.) The Suskos also contend that CHKD's nursing staff failed to properly "assess, document, and trea[t]" a skin breakdown behind Christian's ear and that CHKD's staff failed to properly communicate with each other, all of which contributed to Christian's demise. (*Id.* at 2-3.) Finally, the Suskos argue that Toor negligently failed to transfer Christian to a different facility after the Suskos made such a request. (*Id.* at 2.) Christian eventually was transferred to VCU Health System MCU Hospital and Physicians ("MCU"), but the Suskos allege that this occurred too late because, by then, "the infection was out of control and Christian . . . could not be saved." (Compl. 6.) Christian died after his transfer to MCU, and the Suskos argue that Defendants' negligence proximately caused his death. (Bill of Particulars 1-2.)

The Suskos specifically allege that Toor, White, and CHKD "were negligent by failing to properly diagnose" an infection that afflicted Christian, "failing to properly treat this infection," and "fail[ing] to properly treat [Christian], which resulted in [Christian's] death." (Compl. 1.) The Suskos request awards of both compensatory and punitive damages. (*Id.* at 3-4.)

Toor, White, and Children's Specialty Group demurred to the Complaint, arguing that the Suskos failed to state a claim against Children's Specialty Group and failed to plead facts that would justify an award of punitive damages. CHKD filed a separate Demurrer asserting the same argument challenging the Suskos' punitive damages claim.

CHKD filed a Motion To Dismiss New Claims and Special Plea of the Statute of Limitations, arguing that the new claims raised in the Bill of Particulars are barred under the applicable statute of limitations. Toor, White, and Children's Specialty Group filed a Motion To Dismiss the Complaint, contending that the Suskos failed to obtain the expert certification required by § 8.01-50.1 of the Code of Virginia; they specifically assert that the Suskos could not have reasonably believed that Nurse Budge would qualify as an expert witness on the issues of deviation from the applicable standard of care and proximate causation of death. CHKD filed a separate Motion To Dismiss the Complaint, contending that Nurse Budge cannot qualify as an expert witness on proximate causation.

On September 17, 2015, counsel appeared before the Court and presented argument on the motions to dismiss and demurrers. As resolution of the motions to dismiss is dispositive of this action under the circumstances, the Court rules only on these motions.

*Positions of the Parties*

A. *CHKD's Motion To Dismiss New Claims and Special Plea of the Statute of Limitations*

CHKD contends that the Suskos raise claims against CHKD and its staff in their Bill of Particulars that were not previously asserted in the nonsuited action. (Def.'s Mot. To Dismiss New Claims 1-3.) CHKD argues that these new claims must be dismissed as untimely because the Suskos failed to assert them within the statutory period of limitations. CHKD notes that, pursuant to § 8.01-244(B) of the Code of Virginia, wrongful death actions against health care providers must be brought within two years of the decedent's death, which the Suskos failed to do. CHKD asserts that, here, the Suskos failed to raise the new claims within two years of Christian's death on August 18, 2010. (Tr. 44-45.) CHKD contends that the statute of limitations for these new claims continued to run while the nonsuited action was pending because these claims are not part of the original cause of action, so the tolling provisions of § 8.01-229(E)(3) of the Code of Virginia do not apply. (Def.'s Mot. To Dismiss New Claims 4.)

B. *Toor's, White's, and Children's Specialty Group's Motion To Dismiss the Complaint*

Toor, White, and Children's Specialty Group contend that the Suskos failed to obtain an adequate expert certification as required by § 8.01-50.1 of the Code of Virginia. They note that this section requires a wrongful death plaintiff to certify prior to requesting service of process on defendants that he or she has obtained a written opinion signed by an individual who the plaintiff reasonably believes will qualify as an expert witness, stating that (i) the defendants deviated from the applicable standard of care, and (ii) this deviation proximately caused the death of the decedent. Va. Code Ann. § 8.01-50.1 (1950). Defendants argue that the Suskos have not satisfied this requirement and that the Complaint, therefore, should be dismissed.

First, they argue that Nurse Budge is not qualified to offer expert testimony regarding the applicable standard of care under § 8.01-581.20 because she does not possess expert knowledge regarding the standard of care that applies to Toor's and White's specialty of neurology; she has not had an active clinical practice in neurology or in a related field of medicine within one year of Toor's and White's alleged negligence; and she lacks the sort of unique education, training, or experience that would qualify her to offer expert testimony regarding the governing standard of care. (Defs.' Mot. To Dismiss 2-4.)

Second, they contend that Nurse Budge is not qualified to offer expert testimony regarding the proximate cause of Christian's injuries as claimed in the Complaint. (*Id.* at 4.) Specifically, they assert that, under Virginia law,

only licensed physicians are qualified to testify as to the cause of human physical injuries, and Christian's alleged infections constitute "human physical injuries." (*Id.* at 3.) Defendants, therefore, assert that Nurse Budge is not qualified, as a matter of law, to testify regarding the proximate cause of Christian's death. (*Id.* at 4.)

## C. *CHKD's Motion To Dismiss the Complaint*

The arguments advanced by CHKD in its Motion To Dismiss the Complaint largely echo those asserted by Toor, White, and Children's Specialty Group. CHKD contends that Nurse Budge is not qualified to offer expert testimony regarding the proximate cause of Christian's death because she is not a medical doctor. (CHKD Mot. To Dismiss 1-2.) CHKD cites several decisions from the Virginia Supreme Court that stand for the proposition that, with one limited exception inapplicable to the case at bar, only medical doctors may offer testimony on medical causation regarding human physical injuries. (*Id.* at 2-6.) CHKD argues that the infection that allegedly caused Christian's demise constitutes a "human physical injury" and further asserts that registered nurses, such as Nurse Budge, are not permitted under Virginia law to diagnose patients with such infections. (*Id.* at 6-10.)

## D. *The Suskos' Brief in Opposition to Motions To Dismiss*

The Suskos did not file a pre-hearing brief in response to the Defendants' motions to dismiss the Complaint. In this case, the Hearing on the motions to dismiss was continued twice, and the Suskos did not file a responsive brief prior to any of the scheduled hearings. In their post-hearing Brief in Opposition to Motions to Dismiss, the Suskos claim that "[a]ll Plaintiffs' Bill of Particulars did was clarify paragraphs 4 and 5 of the Complaint and explain in greater detail to the defense the Plaintiffs' position." (Pl.'s Br. in Opp. 5.)

The Suskos also contend that Nurse Budge is qualified to offer expert testimony regarding the standard of care applicable in this case. (*Id.* 3-4.) The Suskos concede that Nurse Budge lacks specialized expertise in neurology. (*Id.* at 1.) They claim, however, that the negligence in which Defendants allegedly engaged relates exclusively to bedsores that Christian developed as a result of Defendants' negligence and thus does not relate to neurology. (*Id.* at 2.) The Suskos claim that Nurse Budge, therefore, need not be an expert in the field of neurology for them to reasonably believe that she will qualify as an expert witness regarding the applicable standard of care as required by §§ 8.01-50.1 and 8.01-581.20(A) of the Code of Virginia. (*Id.*)

The Suskos further assert that Nurse Budge is qualified to provide expert testimony regarding whether Defendants' alleged deviations from

the applicable standard of care proximately caused Christian's death. (*Id.* 2.) The Suskos reiterate that the only injuries at issue are bedsores, which they claim were caused by Defendants' negligence. (*Id.*) The Suskos attempt to distinguish prior Virginia Supreme Court cases, which hold that only physicians may testify as to the cause of "human physical injuries," by claiming that bedsores are not "human physical injuries." (*Id.*) They opine that this case does not fall within the general rule requiring expert testimony by a medical doctor and that Nurse Budge, therefore, may qualify as a causation expert. To further support their position, the Suskos cite to a Pennsylvania Supreme Court opinion holding that nurses may qualify to provide expert testimony regarding the cause of bedsores. (*Id.* at 2-3.)

*Analysis*

A. *Legal Standard*

The Code of Virginia provides as follows:

> If a plaintiff suffers a voluntary nonsuit . . . the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation . . . whichever period is longer.

Va. Code § 8.01-229(E)(3).

Plaintiffs bringing wrongful death actions in Virginia against health care providers must satisfy the expert certification requirement prescribed by § 8.01-50.1 of the Code of Virginia. The statute provides that, by requesting service of process on the defendant in a wrongful death action, the plaintiff certifies that he or she has obtained a written opinion from an individual "whom the plaintiff reasonably believes would qualify as an expert witness" pursuant to § 8.01-581.20(A) of the Code. *Id.* § 8.01-50.1. This written opinion must state that, "based upon a reasonable understanding of the facts," the potential expert witness has concluded that (i) the defendant "deviated from the applicable standard of care," and (ii) the "deviation was a proximate cause of the injuries claimed." *Id.*

In Virginia, "whether a witness is qualified to render an expert opinion is a question submitted to the sound discretion of the trial court." *Combs v. Norfolk & W. Ry.*, 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998). To qualify as an expert, a witness must have "sufficient knowledge, skill, or experience to render him competent to testify as an expert on the subject matter of the inquiry." *Id.*

## B. *Discussion*

The Court has considered the pleadings, oral argument at the September 17, 2015, hearing, post-hearing briefs, and applicable authorities.

### 1. *The Suskos' New Claims against CHKD and Its Staff Were Not Timely Raised and Are Barred*

CHKD contends that the "new" claims advanced by the Suskos against CHKD and its staff in the Bill of Particulars are untimely. (Def.'s Mot. To Dismiss New Claims 5.) CHKD essentially argues that taking a voluntary nonsuit tolls the statute of limitations as to only those claims asserted in that nonsuited action. (*Id.* at 4.) CHKD asserts that the new claims in the Suskos' Bill of Particulars, which was filed after the Complaint, were not part of the prior nonsuited action and, therefore, are untimely. (*Id.* at 3.) In response, the Suskos argue that these claims "are not new claims" and that "[t]hey are just expanding on what was said previously" in Paragraphs 4 and 5 of the Complaint. (Tr. 48.)

As noted *supra*, the Code of Virginia provides as follows:

> If a plaintiff suffers a voluntary nonsuit . . . the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation . . . whichever period is longer.

Va. Code § 8.01-229(E)(3). In other words, the statute of limitations ceases to run while the nonsuited "action" is pending. The Virginia Supreme Court has interpreted the term "action" to mean "cause of action" for purposes of this subsection. *McKinney v. Virginia Surgical Assocs., P.C.*, 284 Va. 455, 460, 732 S.E.2d 27, 29 (2012). The filing of a subsequently nonsuited action tolls the statute of limitations for the entire "cause of action" asserted therein, and an action asserting that same "cause of action" relates back to the filing date of the nonsuited action for purposes of the statute of limitations. *Id.* Importantly, a nonsuit only tolls the statute of limitations for causes of action set forth in the nonsuited action and has no effect on the statute of limitations for causes of action not raised in the nonsuited action. *See, e.g., Allen v. Loudoun Cnty. Sanitation Auth.*, 81 Va. Cir. 496, 504 (Loudoun Cnty. 2009).

The Court, therefore, must determine whether the claims against CHKD and its staff raised by the Suskos in their Bill of Particulars are part of the same "cause of action" asserted in the nonsuited action. The term "cause of action" means "the set of operative facts which, under the substantive law, gives rise to a 'right of action'." *McKinney*, 284 Va. at 460, 732 S.E.2d at 29. In turn, a "right of action" is a "remedial right to presently enforce an

existing cause of action." *Van Dam v. Gay*, 280 Va. 457, 460, 699 S.E.2d 480, 481 (2010).

Here, the Suskos assert in the Complaint a cause of action for wrongful death pursuant to § 8.01-50 of the Code of Virginia. Pursuant to § 8.01-244 of the Code, the statute of limitations for this action is two years, which began to run on the date of Christian's death, *i.e.*, August 18, 2010. Va. Code § 8.01-244(B). The new claims raised in their Bill of Particulars appear to assert a cause of action arising out of a separate alleged personal injury. The statute of limitations for personal injury claims is also two years, id. § 8.01-243(A), and begins to run on the date the injury occurs. *Id.* § 8.01-230.

The Suskos commenced their original wrongful death action on July 2, 2012. That action asserted largely the same claims and relied upon the same negligence theories as the present action. The Suskos nonsuited that action on June 18, 2013, and commenced the present action on December 17, 2013, within the six-month period allowed under the Code, by filing the Complaint, which is identical to the complaint filed in the previously nonsuited action. The Suskos amplified the Complaint by subsequently filing a Bill of Particulars, in which they assert new claims alleging that the nursing staff employed by CHKD was negligent by "fail[ing] to turn and reposition Christian" and by "fail[ing] to adequately assess, document, and treat the skin breakdown documented behind Christian's ear." (Bill of Particulars 1-2.) The Suskos also assert in their Bill of Particulars that CHKD's staff lost an original sample from a lumbar puncture performed on Christian which unnecessarily required Christian to undergo a second lumbar puncture procedure and caused Christian to develop pneumonia and pseudomonas by failing to reposition him for extended periods of time. (*Id.* at 1-2.)

The claims outlined in the Bill of Particulars are not part of the same "cause of action" asserted in the nonsuited action. In the nonsuited action, the Suskos allege that White, Toor, and CHKD negligently failed to treat, diagnose, or notify the Suskos about an unspecified infection. In contrast, the claims the Suskos raise in their Bill of Particulars against CHKD and its staff involve conduct by a separate group of individuals and relate to a "skin breakdown documented behind Christian's ear" without alleging that this skin breakdown is related to the infection discussed in the Complaint. The claims against CHKD and its staff in the Bill of Particulars, therefore, arise from a different "set of operative facts" than the claims raised against Toor, White, and CHKD in the nonsuited action. The new claims in the Bill of Particulars thus constitute a different "cause of action," and the nonsuit of the original action, therefore, did not toll the statute of limitations on the new claims against CHKD and its nursing staff regarding the skin breakdown.

As previously stated, the statute of limitations on these new claims, whether viewed as a personal injury claim or a wrongful death claim, is

two years, which started to run upon or before Christian's death on August 18, 2010. As the Suskos did not raise these new claims prior to August 18, 2012, two years later, the Court holds that the new claims in the Suskos' Bill of Particulars are barred by the statute of limitations pursuant to §§ 8.01-243(A) and 8.01-244(B) of the Code of Virginia.

The Court, therefore, grants CHKD's Motion To Dismiss New Claims and Special Plea of the Statute of Limitations and dismisses these claims, with prejudice, as untimely.

### 2. Plaintiff Could Not Have Reasonably Believed That Nurse Budge Would Qualify as an Expert Witness Regarding Either the Applicable Standard of Care or Proximate Causation.

Because the Court dismisses the Suskos' claims against CHKD and its staff — asserted for the first time in the Suskos' Bill of Particulars — as untimely, only the claims asserted in the Complaint are before the Court.

As noted *supra*, a plaintiff in a wrongful death action must reasonably believe that the individual from whom it has obtained a written opinion pursuant to § 8.01-50.1 of the Code of Virginia will qualify as an expert witness on both the standard of care applicable to the defendant health care provider pursuant to § 8.01-581.20(A) and whether the defendant's deviation from that standard of care constituted a proximate cause of the decedent's alleged injuries. Va. Code § 8.01-50.1. If the plaintiff could not reasonably have believed that the designated individual would qualify as an expert on either the applicable standard of care or proximate causation when it requested service of process on the defendant, the court "may dismiss the case with prejudice." *Id.*

### a. *Standard of Care*

The Code of Virginia provides that health care professionals licensed by the Commonwealth, as well as certain health care professionals licensed by other states, are "presumed to know the statewide standard of care in the specialty or field of practice in which [they are] qualified and certified." Va. Code § 8.01-581.20(A). If an expert witness is not "qualified and certified" in the "specialty or field of practice" whose standard of care is at issue, the witness still may qualify as an expert if she "demonstrates sufficient knowledge, skill, or experience to make [her] competent to testify as an expert on the subject matter at issue." *Lloyd v. Kime*, 275 Va. 98, 109, 654 S.E.2d 563, 569 (2008) (internal quotation marks omitted).

A health care provider unlicensed in the specialty applicable to the standard of care at issue may only qualify as an expert witness regarding that standard of care if he or she (i) "demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards," and (ii) "has had active clinical practice in

either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action." Va. Code § 8.01-581.20(A); *Lloyd*, 275 Va. at 109, 654 S.E.2d at 569. Courts have referred to these requirements as the "knowledge requirement" and the "active clinical practice requirement," respectively. *See, e.g., Wright v. Kaye*, 267 Va. 510, 518, 593 S.E.2d 307, 311 (2004).

At issue in this case is the standard of care governing Defendants' actions in caring for Christian while he was a patient at the Hospital. In the Complaint, the Suskos allege that Defendants were negligent in failing to diagnose and treat an infection that Christian developed while in their care. (Compl. 1.) In view of this allegation, Nurse Budge must qualify as an expert regarding the standard of care applicable to health care professionals under those circumstances.

It is undisputed that Nurse Budge is not a physician licensed by the Commonwealth of Virginia or by any other state. Because she is not a licensed physician, the Court does not presume, pursuant to § 8.01-581.20(A), that she has knowledge regarding the standard of care applicable to the defendant physicians in this case. Nurse Budge theoretically could, however, still qualify as an expert regarding the applicable standard of care if she satisfies both the "knowledge" and "active clinical practice" requirements or otherwise "demonstrates sufficient knowledge, skill, or experience to make [her] competent to testify as an expert" regarding the standard of care. *Lloyd*, 275 Va. at 109, 654 S.E.2d at 569.

Nurse Budge, however, does not satisfy either requirement. She does not satisfy the "knowledge" requirement because the record contains no indication that she has expert knowledge regarding the standard of care applicable to Toor's and White's specialty of neurology or concerning the sort of conduct that conforms, or fails to conform, with that standard of care. With respect to the "active clinical practice" requirement, the Suskos have not alleged that Nurse Budge had an "active clinical practice" in neurology or in any related field of medicine within one year of the events at issue. Finally, although Nurse Budge appears to be a qualified and accomplished nurse, the record is devoid of any evidence that she possesses "sufficient knowledge, skill, or experience to make [her] competent to testify as an expert" on the standard of care applicable to Toor and White in their treatment of Christian. Simply stated, Nurse Budge, as a registered nurse, has neither the knowledge nor the active clinical practice of a physician neurologist, and she is not otherwise competent to testify as an expert on the applicable standard of care. Under the circumstances as presented, the Court holds that the Suskos could not have reasonably believed that Nurse Budge would qualify as an expert regarding the applicable standard of care when they requested service of process on Defendants.

### b. *Proximate Causation*

Regarding causation, under Virginia law "only a medical doctor is qualified to give expert testimony about the cause of a human physical injury." *Hollingsworth v. Norfolk S. Ry.*, 279 Va. 360, 364, 689 S.E.2d 651, 653 (2010). This is because "the question of causation of a human injury is a component part of a diagnosis, which in turn is part of the practice of medicine" under § 54.1-2900 of the Code of Virginia. *Combs*, 256 Va. at 496, 507 S.E.2d at 358; *see also* Va. Code § 54.1-2900 (defining "practice of medicine" as "the prevention, diagnosis and treatment of human physical or mental ailments, conditions, diseases, pain, or infirmities by any means or method").

The Virginia Supreme Court has strictly enforced this rule. In *Hollingsworth*, the Court held that podiatrists are not qualified to testify regarding the causation of ankle injuries. 279 Va. at 366-67, 689 S.E.2d at 654-55. When the *Hollingsworth* court issued its decision, the statutory definition of the "practice of podiatry" only encompassed the "*treatment* of the ailments of the human foot and ankle." *Id.* at 366, 689 S.E.2d at 654. Because expert testimony regarding causation requires the witness to be qualified to diagnose a human injury, a power the statute vested solely in "the practice of medicine," the Court concluded that, "while both medical doctors and podiatrists may engage in the treatment of a physical injury to the human foot and ankle, only a medical doctor may engage in the diagnosis of that injury so as to qualify to render an expert opinion regarding the causation of that injury." *Id.*

Under the same rationale, the Court held that biomedical engineers may not testify regarding the causation of fistulas, *Norfolk & W. Ry. v. Keeling*, 265 Va. 228, 235, 576 S.E.2d 452, 457 (2003), or ruptured discs, *Combs*, 256 Va. at 496-97, 507 S.E.2d at 359, and that a psychologist with a Ph.D. cannot testify regarding the causation of brain injuries. *John v. Im*, 263 Va. 315, 321, 559 S.E.2d 694, 697 (2002).

The Supreme Court has recognized only one exception to this rule. In *Velazquez v. Commonwealth*, the Court held that a sexual assault nurse examiner ("SANE") is competent to provide expert testimony regarding the "causation of injuries alleged in the context of an alleged sexual assault." 263 Va. 95, 104, 557 S.E.2d 213, 218 (2002). Importantly, however, the Court expressly stated that the rationale undergirding the *Velazquez* exception applies only in the context of specially trained nurses giving expert testimony in sexual assault cases and does not extend outside of that limited circumstance. *Im*, 263 Va. at 321, n. 2, 559 S.E.2d at 697, n. 2 (concluding that "our holding in *Velazquez* is limited to the unique context of a SANE's expert opinion concerning the causation of injuries in a sexual assault case" and emphasizing that this exception "does not change the general rule . . . that only a medical doctor may give an expert opinion about the cause of a physical human injury").

Virginia law, therefore, establishes a clear rule regarding causation expert witnesses. Other than the limited exception recognized in *Velazquez*, only medical doctors are qualified to offer expert opinions regarding causation of human physical injuries. The Suskos urge the Court to find that, although Nurse Budge is not a medical doctor, she is qualified to provide expert testimony regarding the cause of Christian's injuries and ultimate death. They offer two arguments in support of their position. First, they assert that Christian's bedsore is not a "human physical injury" and that persons other than medical doctors, therefore, may opine regarding its cause. Second, they quote *Velazquez* that "it has long been accepted that nurses . . . with the proper training, expertise, and experience are qualified to give expert opinions on medical causation in appropriate circumstances" and argue that the case at bar presents "appropriate circumstances" to justify deviating from the general rule. *Velazquez*, 263 Va. 103-04, 557 S.E.2d at 218. They also cite to a Pennsylvania decision, *Freed v. Geisinger Med. Ctr.*, 601 Pa. 233, 971 A.2d 1202 (2009), for the proposition that nurses should be allowed to provide expert testimony on the causation of human injuries.

The Court is not persuaded by the Suskos' arguments. First, the Court finds no merit in the contention that a bedsore is not a "human physical injury." As CHKD points out, even if Nurse Budge were competent to testify as to the cause of the alleged bedsore, causation testimony linking (i) the bedsore to the alleged infection and (ii) the infection to Christian's death still would be necessary. (CHKD Resp. to Pl.'s Br. in Opp. 3.) A bedsore undoubtedly constitutes an injury that is physical in nature and is experienced by human beings. The Court, therefore, finds that a bedsore constitutes a "human physical injury" as that term has been used by the Virginia Supreme Court.

Second, the Court holds that the case at bar does not present the necessary "appropriate circumstances" to justify deviating from the general rule in order to permit Nurse Budge to opine regarding the cause of Christian's alleged injuries. The Supreme Court has allowed nurses to provide expert causation testimony only where they are certified SANE nurses and the injury at issue is related to a sexual assault. Such circumstances are not present here. In view of the Supreme Court's prior cases and its statement expressly limiting the *Velazquez* exception, the Court declines to create a new exception to the general rule where none has been recognized previously. Lastly, the Court is not persuaded by *Freed*, a Pennsylvania case whose rationale conflicts with Virginia jurisprudence and that, in any event, is not binding on this Court.

Accordingly, the Court holds that Nurse Budge is not qualified to provide expert testimony regarding either the applicable standard of care or the proximate cause of Christian's alleged injuries. The Court also holds that, under the circumstances present here, the Suskos could not have reasonably

believed that Nurse Budge would qualify as an expert witness on these matters when they requested service of process on Defendants.

### 3. *The Court Dismisses This Entire Action with Prejudice*

If a plaintiff in a wrongful death action "did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant," § 8.01-50.1 of the Code of Virginia requires the Court to "impose sanctions according to the provisions of § 8.01-271.1" on the plaintiff and authorizes the Court to "dismiss the case with prejudice." Va. Code § 8.01-50.1. A certifying expert opinion is not "necessary" under § 8.01-50.1, however, where "the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Smith v. Shenandoah Valley Care, Inc.*, 79 Va. Cir. 739, 741 (Page Cnty. 2008).

Here, the Suskos failed to obtain a necessary certifying expert opinion as required by § 8.01-50.1. The acts of negligence alleged in the Complaint involve medical knowledge concerning infection and possible causes thereof, as well as specialized knowledge of hospital procedures regarding the movement and transfer of patients. Such knowledge does not lie "within the range of the jury's common knowledge and experience," so a certifying expert opinion is "necessary" in this case. Consequently, the Court is required to sanction the Suskos in accordance with § 8.01-271.1.

Section 8.01-271.1 of the Code of Virginia requires that the Court impose "an appropriate sanction" on the transgressing party and authorizes, if the Court deems it appropriate, dismissal of the case with prejudice pursuant to § 8.01-50.1. Although further guidance is not provided regarding when dismissal with prejudice is the "appropriate sanction" or under what circumstances alternative sanctions may be appropriate, other Virginia circuit courts have held that dismissal with prejudice is appropriate where the plaintiff failed to satisfy the expert certification requirement in wrongful death actions or failed to satisfy the analogous expert certification requirement in medical malpractice actions. *See, e.g., Doughty v. Yancey*, No. CL11-1645 (Chesapeake Cir. Ct. Aug. 22, 2014) (medical malpractice); *Reid v. Wyatt*, No. CL10-267 (Accomack Cnty. Cir. Ct. Sept. 15, 2010) (medical malpractice); *Christianbey v. Johns*, No. CL09-2770 (Richmond Cir. Ct. Nov. 12, 2009) (medical malpractice); *McMillan v. Potomac Hosp. of Prince William, Inc.*, No. 89273 (Prince William Cnty. Cir. Ct. May 22, 2009) (medical malpractice); *Richardson v. Oxenhandler*, No. CL08-6514 (Fairfax Cnty. Cir. Ct. Apr. 10, 2009) (medical malpractice); *Smith*, 79 Va. Cir. 739 (wrongful death); *Smith v. Shenandoah Valley Care, Inc.*, 79 Va. Cir. 739, 740-41 (Page Cnty. 2008) (wrongful death); *Hansen v. Lapeyrolerle*, No. CL06-3012 (Norfolk Cir. Ct. Nov. 15, 2007) (medical malpractice); *Poe v. Gisolfi*, No. 2005-5734 (Fairfax Cnty. Cir. Ct. Dec. 22, 2006) (medical malpractice); *Lewis v. Commonwealth Orthopaedics & Rehabilitation*, No. CL20056616 (Fairfax Cnty. Cir. Ct. Mar. 10, 2006)

(medical malpractice); *Wallace v. Farah*, 72 Va. Cir. 37 (Stafford Cnty. 2006) (medical malpractice); *Gibson v. Chesapeake Gen. Hosp.*, No. CL05-1043 (Chesapeake Cir. Ct. Sept. 20, 2005) (medical malpractice).

In determining the appropriate sanction in the case at bar, the Court considers the following circumstances, among others: (i) the Virginia General Assembly established the requirement for an expert certification in cases such as this one and expressly authorized dismissal of the entire case with prejudice; (ii) the Suskos had sufficient time to prepare an appropriate expert certification, as Nurse Budge's certification is dated over five years after Christian's death and over three years after the Suskos' first-filed suit;[1] (iii) counsel for the Suskos was aware of the expert certification requirement and the potential consequences of filing an inadequate certification;[2] (iv) the Suskos never requested leave from the Court to amend their expert certification or submit another expert certification and, in fact, did not formally respond to Defendants' motions to dismiss the Complaint, which were based on the inadequacy of the certification; (v) based on the facts presented to the Court, Nurse Budge, a registered nurse, cannot qualify to testify as an expert witness regarding the applicable standard of care as she is not a licensed physician neurologist and does not have the knowledge or the active clinical practice of a physician neurologist; (vi) based on the facts presented to the Court, Nurse Budge cannot qualify to testify as an expert witness on the issue of proximate causation of Christian's death because, other than a single exception inapplicable here, under Virginia law only medical doctors are qualified to offer expert opinions regarding causation of human physical injuries; and (vii) Defendants have been prejudiced by having to defend this case for an extended period of time without an expert certification that satisfies the requirements of the Code of Virginia.

In light of the dismissal with prejudice of other decisions in which Plaintiffs failed to file the required expert certification and under the circumstances present here, the Court finds that dismissal of the entire action with prejudice is appropriate. The Court, therefore, grants Defendants' Motion To Dismiss the Complaint with prejudice.

---

[1] As of the date of the Hearing, on September 17, 2015, the Suskos apparently still had not consulted a physician. (Tr. 18-19.)

[2] In *Doughty v. Yancey*, counsel for the Suskos represented the plaintiff. No. CL11-1645 (Chesapeake Cir. Ct. Aug. 22, 2014). That medical malpractice case was dismissed with prejudice based on the plaintiff's failure to comply with the statutory expert certification requirement. It is of significant note that that dismissal occurred only a few months prior to counsel for the Suskos filing the expert certification in this case.

## Conclusion

For the foregoing reasons, the Court holds that the claims raised against CHKD and CHKD's staff for the first time in the Bill of Particulars are barred by the statute of limitations pursuant to §§ 8.01-243(A) and 8.01-244(B) of the Code of Virginia. The Court, therefore, grants CHKD's Motion To Dismiss New Claims and Special Plea of the Statute of Limitations. The Court also holds that the Suskos have failed to satisfy the expert certification requirement of § 8.01-50.1 of the Code of Virginia. The Court, therefore, grants Defendants' Motions To Dismiss and dismisses this entire action with prejudice.